UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ALFONSO PIMENTEL,

                    Petitioner,

          - against -

ALBERTO GONZALEZ, Attorney General of the
United States, et al.,

                    Respondents.
-----------------------------------------------------------X

MEMORANDUM & ORDER

05-CV-1199 (NGG)

GARAUFIS, District Judge.

*Pro se* petitioner Alfonso Pimentel brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contesting the Bureau of Prisons ("BOP") policy limiting prisoner placement in a Community Correction Center ("CCC") to the lesser of six months or the last ten percent of a prisoner's sentence. Pimentel, who filed the instant petition on February 25, 2005, argues that he became eligible for CCC placement as of March 30, 2005 – six month prior to his release date – pursuant to BOP's pre-December 2002 policy, which routinely placed prisoners in a CCC for the last six months of their sentence regardless of whether six months exceeded ten percent of their total sentence.[1] Following in the footsteps of previous inmate litigants, many of whom were successful in their efforts, Pimentel argues that the CCC policy limiting placement to the last ten percent of an offender's sentence is invalid because it was adopted in violation of the Administrative Procedures Act ("APA"), is based on erroneous statutory interpretation, violates

---

[1] Pimentel asserts that he was sentenced on November 17, 2004 to a twelve month term of imprisonment for an undisclosed offense and that he is scheduled for release on September 30, 2005.

1

the Ex Post Facto clause, and violates his due process rights.

Apparently unbeknownst to Pimentel, BOP promulgated a new rule under the APA's notice-and-comment process which became effective on February 14, 2005 (the "February 2005 Rule"), shortly before Pimentel filed the instant petition and prior to the date Pimentel contends he is eligible for CCC placement. The February 2005 Rule continues to limit CCC placement to the last ten percent of a prisoner's sentence, but in response to numerous court opinions, provides an alternative legal basis for the BOP's authority to do so, which BOP asserts remedies any potential legal infirmities with the ten percent policy. BOP argues that several of Pimentel's claims are now moot, that the February 2005 Rule is a correct interpretation of BOP's statutory authority, and that Pimentel's challenge may only be brought under the APA, and not as a habeas petition, because it challenges a condition of confinement, and not the fact or duration of custody. For the reasons set forth below, the petition for a writ of habeas corpus is GRANTED.

I.      **THE HISTORY OF BOP'S CCC POLICY**

Pimentel's claims arise from a change in BOP's long-standing interpretation of 18 U.S.C. §§ 3621(b) and 3624(c). Prior to December 2002, BOP interpreted these statutes to allow inmates to serve any or all of their terms of imprisonment in CCCs. In accordance with this interpretation, BOP's usual practice was to consider prisoners for placement in CCCs for as much as the last six months of their sentences, even if this occurred before the prisoner's ten percent date. See Zucker v. Menifee, No. 03 Civ. 10077, 2004 WL 102779, at *2 (S.D.N.Y. Jan. 21, 2004).

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum concluding that BOP could not, under 18 U.S.C. 3621(b), generally

2

designate inmates to serve terms of imprisonment in CCCs. Community Confinement, Final Rule, 70 Fed. Reg. 1659, 1659 (Jan. 10, 2005) (to be codified 28 C.F.R. pt. 570). The OLC opined that an inmate could be designated to a CCC only in connection with pre-release programming during the last ten percent of the prison sentence served, not to exceed six months. Id. Effective December 20, 2002 (hereinafter "the December 2002 Policy"), BOP changed its CCC designation procedures as set forth in the OLC memorandum. Id.

The December 2002 Policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months. See Pinto v. Menifee, No. 04 Civ. 5839, 2004 WL 3019760 (S.D.N.Y. Dec. 29, 2004) (collecting cases). The two circuit courts to address the merits of BOP's change in policy both invalidated the December 2002 Policy on the grounds that it contravened the plain meaning of Section 3621(b). See Goldings v. Winn, 383 F.3d 17, 23-27 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842, 846-47 (8th Cir. 2004). As held by both of these courts, Section 3624(c) only limits the affirmative obligation of BOP to assure that a prisoner spends the last part of his sentence under pre-release conditions but does not limit the agency's discretionary authority to place a prisoner in a CCC at any other time during the prisoner's sentence.[2] Goldings, 383 F.3d at 26; Elwood, 386 F.3d at 846-47. Thus, Section 3624(c) places

---

[2] Section 3624(c) provides in part:
> The Bureau of Prisons *shall*, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added).

Section 3621(b) provides in part:

a six-month cap on the period of time for which BOP *must* designate an offender to a less restrictive facility, as opposed to limiting the period of time for which BOP *may* designate an offender to a CCC.

Although the Second Circuit has not ruled on the validity of the December 2002 Policy, numerous district courts within the Eastern and Southern Districts of New York have similarly determined that the December 2002 Policy was unlawful, with several courts also rejecting the policy on Ex Post Facto and APA grounds. See e.g., Pinto, 2004 WL 3019760 (Dolinger, J.) (rejecting policy on statutory and APA grounds) (collecting cases); Crowley v. Fed. Bureau of Prisons, 312 F.Supp.2d 453 (S.D.N.Y. 2004) (Hellerstein, J.) (rejecting policy on statutory, APA, and Ex Post Facto grounds); Solomon v. Zenk, No. 04 Civ. 2214, 2004 WL 2370651 (E.D.N.Y. Oct. 22, 2004) (Weinstein, J.) (policy contrary to plain meaning of section 3621(b) and section 3624(c) as well as sound public policy); Grimaldi v. Menifee, No. 04 Civ. 1340, 2004 WL 912099 (S.D.N.Y. Apr. 29, 2004) (Batts, J.) (rejecting statutory interpretation underlying December 2002 policy); Schoenfeld v. Menifee, No. 04 Civ. 3551, 2004 WL 1516797 (S.D.N.Y. July 7, 2004) (Buchwald, J.) (December 2002 policy incompatible with section 3621(b)).[3] But see Loeffler v. Menifee, 326 F.Supp.2d 454 (S.D.N.Y. 2004) (Castel, J.) (upholding policy); Cohn v. Federal Bureau of Prisons, 302 F.Supp.2d 267 (S.D.N.Y. 2004) (Pauley, J.) (same).

On August 18, 2004, BOP proposed a rule under the APA's notice-and-comment

---

> The Bureau, *may* at any time ... direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b) (emphasis added).

[3] In addition, a number of judges, including myself, invalidated the December 2002 Policy in unpublished opinions. Muniz v. Zenk, 04 Civ. 4713 (E.D.N.Y. Dec. 10, 2004) (Garaufis, J.); Pinto, 2004 WL 3019760 at *4 n.3 (collecting cases).

procedure that purported to remedy the infirmities found by those courts that rejected the December 2002 Policy. Community Confinement, Proposed Rule, 69 Fed. Reg. 51213 (Aug. 18, 2004) (to be codified 28 C.F.R. Part 570). The effect of the proposed rule was identical to the December 2002 Policy in that it limited BOP's ability to designate inmates to community confinement to the last ten percent of the prison sentence being served, not to exceed six months. However, in response to the findings of various courts that BOP has discretion under Section 3621(b) to place offenders to a term of imprisonment in CCCs prior to the time set forth in Section 3624(c), BOP proposed "to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." Id. As explained by BOP in information supplementing the proposed rule, "[t]his categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability (unless Congress clearly expresses an intent to withhold that authority)." Id. (citing Lopez v. Davis, 531 U.S. 227, 243-44 (2001)). Thus, where BOP had previously reasoned that it did not have the discretion to place an inmate in a CCC, BOP now acknowledged that it had this discretion, but that it categorically determined that its discretion would not be exercised. The proposed rule became effective on February 14, 2005 ("February 2005 Rule") following BOP's response to public comments. Community Confinement, Final Rule, 70 Fed. Reg. 1659 (Jan. 10, 2005) (to be codified 28 C.F.R. Part 570).[4]

---

[4] The specific text of the new rule provides:
28 C.F.R. § 570.20 What is the purpose of this subpart?
    (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of

BOP's efforts to remedy the infirmities in the December 2002 Policy by promulgating a rule declaring a categorical exercise of discretion with respect to CCC placement has thus far met with mixed success.  To date, one district court has upheld the February 2005 Rule and three district courts have determined that the Rule is invalid.  Compare Yip v. Federal Bureau of Prisons, No. 05 Civ. 1314, 2005 WL 737567, ___ F.Supp.2d ___ (E.D.N.Y. Apr. 1, 2005) (Gershon, J.) (upholding BOP's authority to categorically exercise its discretion concerning CCC transfer) with Drew v. Menifee, No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005) (Pitman, J.) (February 2005 Rule invalid); United States v. Paige, Nos. CR 04-007, CV 04-247, 2005 WL 949317, ___ F.Supp.2d ___ (D.Mt. Apr. 22, 2005) (same); Cook v. Gonzalez, No. 05 Civ. 09, 2005 WL 773956 (D.Or. Apr. 5, 2005) (same).

## II. DISCUSSION

### A. Jurisdiction and the Exhaustion of Remedies

Relying on the recent Seventh Circuit decision Richardson v. Scibana, 387 F.3d 602 (7th

---

discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

28 C.F.R. § 570.21 When will the Bureau designate inmates to community confinement?
(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

Cir. 2004), the government argues that Pimentel's action can only be brought as a civil action under the APA because Pimentel is not challenging either the fact or the duration of his confinement. Because the APA contains a statutory exhaustion requirement which, unlike an action brought under Section 2241, may not be excused on futility grounds, the government subsequently argues that Pimentel's claims must be dismissed for his failure to exhaust his administrative remedies.

In Richmond, the Court of Appeals for the Seventh Circuit held that a prisoner may not seek review of the December 2002 Policy on CCC placement by way of a petition for habeas corpus under 28 U.S.C. § 2241. Instead, a petitioner must proceed by means of an ordinary "civil suit" subject to requirements such as "payment of the full docket fee [and] screening through [use] of the three-strikes rule." Richmond, 387 F.3d at 606. Analogizing to actions challenging parole decisions, the court noted that "a prisoner claiming *release* on parole must use § 2241 (or § 2254 for a state prisoner); but a prisoner claiming that parole officers are apt to use incorrect rules when resolving a future application must use the APA (or 42 U.S.C. § 1983 for a state prisoner)." Id. at 605-06 (citing White v. Henman, 977 F.2d 292 (7th Cir. 1992); Clark v. Thompson, 960 F.2d 663 (7th Cir. 1992); Walker v. Prisoner Review Bd., 694 F.2d 499 (7th Cir. 1982)). The Richmond court concluded that because the petitioner challenged a rule potentially affecting a particular type of custody, and not the fact or duration of the custody itself,[5] relief must be sought under the APA and was subject to the statutory exhaustion requirements set forth in 42 U.S.C. § 1997(e).

---

[5] The court recognized that permissible habeas relief could include changes in custody that were so substantial so as to effectively challenge the "fact" of custody. Richmond, 387 F.3d at 606.

7

Notwithstanding Richmond, this court finds that Pimentel appropriately proceeded through Section 2241 and that his failure to exhaust his administrative remedies is excused. Courts within the Second Circuit have consistently recognized subject matter jurisdiction over actions brought under Section 2241 that challenge the validity of the December 2002 Policy, and more recently, the February 2005 Rule. See e.g., Franceski v. Bureau of Prisons, No. 04 Civ. 8667, 2005 WL 821703, at *3-4 (Apr. 8, 2005 S.D.N.Y.) (rejecting reasoning in Richmond); Cohn, 302 F.Supp.2d at 270 ("A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is the proper vehicle for challenging the execution of the sentence of a person in federal custody, or a person sentenced for violating a federal criminal statute."); Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir. 1997) ("A challenge to the *execution* of a sentence ... is properly filed pursuant to Section 2241.") (emphasis in the original ); Yip, 2005 WL 737567 at * 2; Drew, 2005 WL 525449 at *1; Pinto, 2004 WL 3019760 at *3; Terry v. Menifee, No. 04 Civ. 4505, 2004 WL 2434978 at *2 (S.D.N.Y. Nov. 1, 2004) ("This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2241 and 1361"); Crowley, 312 F.Supp.2d at 455; DiStefano v. Federal Bureau of Prisons, 2004 WL 396999, at *2 (S.D.N.Y. Mar. 4, 2004); Loeffler v. Menifee, 326 F.Supp.2d 454, 456 (S.D.N.Y. 2004); Zucker, 2004 WL 102779 at *3; Adler v. Menifee, 293 F.Supp.2d 363, 366-67 (S.D.N.Y. 2003). Indeed, the government does not cite to a single case within this Circuit that rejected a prisoner's challenge to either the December 2002 Policy or the February 2005 Rule for lack of jurisdiction under Section 2241.

Pimentel does not challenge BOP's refusal to exercise its discretion in favor of his placement in a CCC. Rather, he challenges BOP's determination that it cannot legally consider his request to exercise its discretion. In analogous circumstances, the Second Circuit determined

in St. Cyr v. Immigration & Naturalization Service, 229 F.3d 406, 410 (2d Cir. 2000), aff'd 533 U.S. 289 (2001) that where an alien raised pure questions of law challenging an agency determination that it could not legally consider his request, his habeas challenge was "the type of claim that is cognizable in the district court under 28 U.S.C. § 2241." Much like the petitioner in St. Cyr, Pimentel raises a pure question of law concerning BOP's authority to categorically limit CCC placement to the last ten percent of a prisoner's sentence. Accordingly, Pimentel's challenge is properly brought under Section 2241.

Additionally, this court declines to subscribe to the implication in Richmond that the jurisdictional bounds of habeas and § 1983 (or the APA) are mutually exclusive. See Docken v. Chase, 393 F.3d 1024, 1030 (9th Cir. 2004) (noting that "[a] review of other circuits' approaches indicates that only the Seventh Circuit has even implicitly suggested that habeas and § 1983 can be mutually exclusive"); Franceski, 2005 WL 821703 at *3-4 (challenge to December 2002 Policy "falls within jurisdictional periphery of habeas corpus."). Preiser v. Rodriguez, 411 U.S. 475 (1973) is the seminal case involving whether inmate suits challenging particular aspects of prison conditions may be brought under the federal habeas statute. Preiser held that inmates challenging the deprivation of good-time credit must sue under the federal habeas statute rather than under 42 U.S.C. § 1983 because habeas corpus was the exclusive remedy for prisoners challenging the fact or duration of their confinement – the "core" of habeas corpus. Id. at 487-88. In reaching this determination, the Court cautioned that while "§ 1983 is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life....[t]his is not to say that habeas corpus may not also be available to challenge such prison conditions." In evaluating the Court's treatment of the potential jurisdictional overlap between

9

actions brought under § 1983 and habeas corpus subsequent to Preiser, the Ninth Circuit noted that the Court's central concern "has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, and not the other way around." Docken, 393 F.3d at 1028 (collecting cases). Consistent with this approach, the Supreme Court most recently held in Wilkinson v. Dotson, ___ U.S. ___, 125 S.Ct. 1242 (Mar. 7, 2005) that an inmate's challenge to his eligibility for parole review could be brought under § 1983 because a determination that the inmate was eligible for parole review would not necessarily affect the fact or duration of confinement. However, in determining that a § 1983 claim was available for this type of action, in keeping with the reasoning of its earlier decisions, the Court did not simultaneously preclude the possibility of relief through habeas corpus. Id. at 1253 (Kennedy, J. dissenting) ("the Court does not seem to deny that respondents' claims indeed could be cognizable in habeas corpus proceedings."). Thus, the fact that Pimentel's claims could be brought under the APA does not necessarily preclude a separate remedy under federal habeas corpus.

Having determined that Pimentel may bring his challenge by means of a Section 2241 petition, this court excuses Pimentel's failure to exhaust his administrative remedies. Because the exhaustion requirement for Section 2241 petitions is prudential, not statutory, courts have frequently waived exhaustion requirements in Section 2241 challenges to the December 2002 Policy on the grounds that exhaustion would be futile. See, e.g., Zucker, 2004 WL 102779 at *4 (citing Arango Marquez v. I.N.S., 346 F.3d 892, 897 (9th Cir. 2003)); Pinto, 2004 WL 3109760 at * 3 (collecting cases). Here, not only would an administrative appeal be futile, but without immediate relief by this court, Pimentel could suffer irreparable harm. Pimentel asserts that he is

sentenced to a one-year prison term and seeks CCC placement beginning March 30, 2005, six-months prior to his September 30, 2005 release date. (Pet. ¶¶ 2, 3.) Were Pimentel required to pursue administrative remedies prior to bringing this action, he would likely be done serving much, if not all of his entire sentence such that his request would become moot.[6] More importantly, under February 2005 Rule, BOP has already categorically exercised its discretion to deny Pimentel the relief he seeks. Were Pimentel to proceed through the administrative appeals process, his challenge would invariably be denied pursuant to the February 2005 Rule. Rather than require Pimentel to engage in this futile exercise, Pimentel's failure to exhaust his administrative remedies prior to filing his Section 2241 petition is excused.

### B. Pimentel's Challenge to the December 2002 Policy is Moot

Although the Petitioner challenges the BOP's December 2002 Policy, his eligibility for transfer to a CCC is governed by the February 2005 Rule. Not only was the instant petition filed after the February 2005 Rule became effective, but March 30, 2005, the date at which Pimentel asserts he is eligible for a transfer to a CCC, is also subsequent to the effective date of the February 2005 Rule. In addition, Pimentel's transfer date to a CCC has yet to be calculated. (Declaration of Justin Lilien, ¶ 10.) Accordingly, Pimentel's challenge to the December 2002

---

[6] Upon receipt of a formal written Administrative Remedy Request on the appropriate form ("BP-9") from an inmate, the Community Corrections Manager ("CCM") has 20 days to respond. The inmate then has 20 more dates to appeal to the Regional Director, who has 30 days to respond. If still dissatisfied, the inmate may appeal to General Counsel within an additional 30 days, to which the General Counsel has 40 days to respond. See 28 C.F.R. § 542.
The fact that Pimentel did not file the instant petition until the eve of his final six months in custody, does not of course, compel this court to waive the exhaustion of remedies requirement for fear that Pimentel would suffer imminent harm. However, even if Pimentel diligently initiated administrative proceedings the day he began his one-year sentence, it is unlikely that his claim would have been decided administratively, and then by a habeas court, before the onset of the final six months of his sentence.

Policy is moot. See Yip, 2005 WL 737597, at *2 ("Petitioner's challenge to the December 20, 2002 policy has been mooted by the adoption of the February 14, 2005 policy.").

Because Pimentel's transfer date to a CCC is limited to the last ten percent of his sentence under both the December 2002 Policy and the February 2005 Rule and several of his claims against the December 2002 Policy have equal relevance to the February 2005 Rule, this court will construe the instant *pro se* petition as a challenge to the February 2005 Rule. See Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) ("Implicit in the right of self-representation is obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."). However, when viewed in light of the February 2005 Rule, two of Pimentel's claims are clearly moot.

Pimentel's APA claim echoes the determination of several courts that the December 2002 Policy was invalid because the BOP was required to comply with APA's notice-and-comment procedures. See e.g., Pinto, 2004 WL 3019760 at *12-13 (collecting cases). The February 2005 Rule was promulgated to specifically address the holding of these courts and unlike the December 2002 Policy, was enacted pursuant to the notice-and-comment provisions of the APA. See 5 U.S.C. §§ 551, 553. When applied to the February 2005 Rule, Pimentel's claim that APA notice-and-comment procedures were not followed is without merit.

BOP also argues that Pimentel's claim that the BOP misinterpreted the extent of its statutory authority does not apply to the February 2005 Rule. In evaluating the December 2002 Policy, numerous courts rejected BOP's argument that it lacked the discretion to assign a prisoner to a CCC prior to the last ten percent of a prisoner's sentence as set forth in Section 3624(c). See, e.g., Goldings, 383 F.3d at 23-27; Pinto, 2004 WL 3019760 at *4 (collecting cases). In an attempt

to comply with the holdings of these courts, in promulgating the February 2005 Rule, BOP acknowledged that it had discretion to place offenders sentenced to a term of imprisonment in CCCs before the last ten percent of their sentence, but decided to "categorically exercise its discretion to limit inmates' community confinement to the last ten percent of their sentence, not to exceed six months." 69 Fed. Reg. at 51213. Thus, while the December 2002 Policy is premised on a lack of discretion, the February 2005 Rule is based on discretion that is "categorically exercised." Having acknowledged that Section 3624(c) does not limit BOP's discretion to place an inmate in a CCC, Pimentel's assertion to the contrary is inapplicable to the February 2005 Rule.

### C. The Extent of BOP's Authority to Categorically Exercise Its Discretion

BOP asserts that its determination to proceed by rulemaking in establishing the February 2005 Rule to categorically limit the period of time an inmate may be placed at a CCC was an appropriate exercise of its discretion. BOP derives primary support for its claim from Lopez v. Davis, 531 U.S. 227, 233-34 (2001), wherein the Supreme Court upheld BOP's categorical exercise of discretion under another provision of Section 3621. At issue in Lopez was BOP's interpretation of 18 U.S.C. § 3621(e), which authorizes the Bureau to place inmates in substance abuse treatment programs. As an incentive for successful completion of the substance abuse treatment program, BOP "may" reduce the term of imprisonment for a prisoner who completes the program by up to one year, provided the prisoner was "convicted of a nonviolent offense." 18 U.S.C. § 3621(e)(2)(B). Relying upon "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," BOP promulgated a rule that excluded offenders who possessed a firearm in connection with their

13

offenses from early release eligibility.[7]  Lopez, 531 U.S. at 235.

In Lopez, BOP argued that because Congress did not address how BOP should exercise its discretion within the class of inmates who satisfy the statutory prerequisites for early release, it could exclude inmates either categorically or on a case-by-case basis, subject to its obligation to interpret the statute reasonably.  Id. at 241.  The Court agreed with BOP's position and explained that even where a statutory scheme requires individual determinations (which was not the case in Lopez), "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority."  Id. at 244 (quoting American Hospital Assn. v. NLRB, 399 U.S. 606, 612 (1991)).  The Court further noted that "[t]he Bureau is not required continually to revisit 'issues that may be established fairly and efficiently in a single rulemaking proceeding.'"  Id. (quoting Heckler v. Campbell, 461 U.S. 458, 467 (1983)).

Having determined that BOP may categorically exclude prisoners based on their preconviction conduct, the Court found that BOP's interpretation of the statute was reasonable and in a manner that was not arbitrary or capricious.  The Court concluded that "[t]he Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early-release decision."  Id. at 244.

In Lopez, the statue denying early release eligibility to violent offenders manifested congressional concerns for preconviction behavior that suggested a propensity for violence and a

---

[7] Like the instant case, BOP's decision to promulgate a regulation to categorically exercise its discretion followed a split among the Circuits concerning the validity of BOP's statutory interpretation of Section 3621(e)(2)(B).

corresponding risk to the public. BOP's determination to extend the class of inmates ineligible for early release to inmates who possessed a firearm in connection with their nonviolent offenses addressed these same concerns. See Lopez, 531 U.S. at 244. Here, rather than merely delineate the boundaries of its discretion consistent with congressional intent as in Lopez, the February 2005 Rule removes all discretion in all cases in determining whether to transfer an inmate to a CCC at any time prior to the last ten percent of the inmate's sentence. While BOP has the authority to clarify the contours of its discretionary authority as it relates to certain classes of issues, this court is unconvinced that BOP may categorically remove its entire ability to exercise its discretion, where, as here, the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence.

> Section 3621(b) provides, in relevant part:
>
> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
>     (1) the resources of the facility contemplated;
>     (2) the nature and circumstances of the offense;
>     (3) the history and characteristics of the prisoner;
>     (4) any statement by the court that imposed the sentence–
>         (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>         (B) recommending a type of penal or correctional facility as appropriate; and
>     (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the rule promulgated in Lopez, the February 2005 Rule in no way furthers or interprets these factors. Instead, it disregards them. In its response to comments on this issue during the notice-and-comment period for the February 2005 Rule, BOP stated that it "will continue to evaluate these factors when making individual determinations to appropriate Bureau facilities, and this rule will not adversely affect such individualized determinations." 70 Fed. Reg. at 1160. This evasive response avoids an acknowledgment that under the February 2005 Rule, a CCC is *never* an "appropriate Bureau facility" prior to the last ten percent of an inmate's sentence. BOP's logic, that it will consider the factors set forth in Section 3621(b) in designating the place of imprisonment *except* where the place of imprisonment is a CCC, is an artificial distinction without a statutory basis.

The legislative history for Section 3621(b) also suggests that while Section 3621(b) is not intended to restrict the BOP's discretion in determining a prisoner's placement in the appropriate facility, it nonetheless calls on the agency to consider the prisoner's offense, the history and characteristics of the prisoner, and the other factors set forth in Section 3621(b). As stated in the Report of the Senate Committee on the Judiciary accompanying the enactment of Section 3621, S.Rep. No. 98-225, *reprinted* in 1984 U.S.C.C.A.N. 3182, 3324-25:

> In determining the availability or suitability of the facility selected, the Bureau *is specifically required* [by Section 3621(b)] to consider such factors as the resources of the facility considered, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court concerning the purposes for imprisonment in a particular case, any recommendations as to type of facility made by the court, and any pertinent policy statements issued by the sentencing commission pursuant to proposed 28

> U.S.C. § 994(a)(2). *After considering these factors*, the Bureau of Prisons may designate the place of imprisonment in an appropriate type of facility, or may transfer the offender to another appropriate facility.
> In the absence of unusual circumstances, Federal courts currently will not review a decision as to the place of confinement. The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, *does not intend to restrict or limit the Bureau in the exercise of its existing discretion* so long as the facility meets the minimum standards of health and habitability of the Bureau, but intends to set forth the appropriate factors that the Bureau should consider in making the designations.

(Emphasis added.) The government argues that this legislative history indicates that Congress did not attempt to limit BOP exercise of discretion and accordingly, BOP has the unfettered ability to categorically exercise its discretion without regard to the factors set forth in Section 3621(b). To the contrary, the legislative history indicates that BOP is specifically required to consider the factors set forth in Section 3621(b) prior to arriving at a determination regarding the appropriate facility for a given inmate. The February 2005 Rule improperly precludes a consideration of these factors in the case of CCC placement.

As set forth in Drew v. Menifee, wherein the court also invalidated the February 2005 Rule, "there is no inconsistency between recognizing the BOP's right to exercise its discretion on a categorical basis and requiring that it consider the factors Congress has specifically identified as relevant." 2004 WL 525449 at *5. Pursuant to Lopez, BOP is free to make a categorical finding that the nature and circumstances of a particular offense or the history and characteristics of a class of offender present concerns than outweigh the other factors in Section 3621(b). The February 2005 Rule fails because it in no way relates to or considers these factors with regard to transfer to a CCC.

D. **EX POST FACTO CLAUSE**

Pimentel contends that the February 2005 Rule violates the Ex Post Facto Clause because it amounts to a retroactive increase to his punishment. Having already found the February 2005 Rule improperly ignores the factors set forth in Section 3621(b), I decline to decide whether it also violates the Constitution. See Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347 (1936) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); Slack v. McDaniel, 429 U.S. 473, 475 (2000) (same).

III. **CONCLUSION**

For the foregoing reasons, the petition is granted and respondent is ordered, in good faith, to consider the appropriateness of transferring the petitioner to a community confinement center in light of the factors set forth in Section 3621(b) and any additional factors deemed appropriate by the BOP, without reference to the BOP policy promulgated in December 2002 and without reference to the BOP's February 14 amendment to 28 C.F.R. § 570.21. Respondent is to make this determination promptly, and, in no event, later than ten (10) days from the date of this Order. SO ORDERED.

Dated: May 3, 2005  　　　　　　　　　　　　　　　　　/s/ Nicholas G. Garaufis
      Brooklyn, New York  　　　　　　　　　　　　NICHOLAS G. GARAUFIS
                                                             United States District Judge